CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 21 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Moody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JILL R. STINNETT, | ) |
| | ) Civil Action No. 7:11CV00282 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Jill R. Stinnett, was born on January 14, 1966 and eventually completed the eleventh grade in school. Mrs. Stinnett worked in the early 1990s as a screen printer. Since that time, she has not worked on a regular basis. For purposes of this case, given the length of time since plaintiff's last regular work activity, it is assumed that Mrs. Stinnett has no past relevant work. (TR 25). See 20 C.F.R. § 416.965.

On August 27, 2007, Mrs. Stinnett filed an application for supplemental security income benefits. Prior to that time, she had filed four other applications for disability benefits. By

memorandum opinion and order entered March 21, 2003, this court affirmed the denial of one of plaintiff's earlier applications for disability insurance benefits and supplemental security income benefits. See Stinnett v. Barnhart, Civil Action No. 2:01CV00132, (Jones, J.). During the period of time prior to the court's decision in that earlier case, Mrs. Stinnett applied for and received supplemental security income benefits on the basis of a somatoform disorder.[1] According to the Administrative Law Judge in the instant case, Mrs. Stinnett's earlier period of entitlement to SSI benefits "was ceased apparently when her husband died in 2004 and she began to receive benefits for their son until he reached age eighteen. Her resources exceeded her eligibility for SSI." (TR 10). Thus, plaintiff was compelled to reapply for supplemental security income benefits when her family's entitlement to benefits on her deceased husband's wage earner's account ended.

Mrs. Stinnett's most recent application was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 1, 2010, the Law Judge also determined that Mrs. Stinnett is not disabled. The Law Judge found that plaintiff suffers from severe impairments on the bases of degenerative disc disease, fibromyalgia, a recent injury to the left knee, a history of alcohol and drug abuse, tobacco abuse with shortness of breath, a major depressive disorder, anxiety, and a remote history of seizures and headaches. (TR 12). Despite this combination of

---

[1] Somatoform disorders are characterized by physical symptoms that are not fully explained by another disorder—physical or mental. Symptoms of somatoform disorders are not volitional. Somatoform disorders are distressing and often impair social, occupational, academic, or other aspects of functioning. These disorders include body dysmorphic disorder, conversion disorder, hypochondriasis, pain disorder, somatization disorder, undifferentiated somatoform disorder, and somatoform disorder not otherwise specified. Body dysmorphic disorder differs somewhat from other somatoform disorders in that it is characterized by preoccupation with perceived defects in physical appearance. Katherine A. Phillips, Overview of Somatization, in The Merck Manual for Health Care Professionals, http://www.merckmanuals.com/professional/psychiatric_disorders/somatoform_and_factitious_disorders/overview_of_somatization.html (last visited June 15, 2012).

2

impairments, the Law Judge held that Mrs. Stinnett retains sufficient functional capacity to engage in a limited range of light work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she should not climb ladders or work at heights; she can only occasionally crouch, crawl and stoop; she needs to change postures briefly, in place, each hour without leaving her work station; she is moderately limited in concentration; she can perform only simple, non-complex tasks; and she cannot work with the public, but can work with other people around.

(TR 19-20). Given such a residual functional capacity, and after consideration of plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Mrs. Stinnett retains the capacity to perform several specific light work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mrs. Stinnett is not disabled, and that she is not now entitled to supplemental security income benefits. See gen., 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Stinnett has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence

3

of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. Based on the evidence before the Administrative Law Judge, the court believes that the Law Judge properly determined that plaintiff's physical problems are not so severe, considered singly or in combination, as to prevent performance of light levels of work in which she is permitted to change position at will.[2] However, the court is unable to conclude that the Commissioner has properly considered all the evidence relating to plaintiff's nonexertional impairments, consisting of depression, anxiety, and somatoform disorder. The current medical record contains reports from two psychologists who have seen Mrs. Stinnett over the last several years.[3] Both psychologists indicated that plaintiff experiences a significant level of emotional dysfunction. Indeed, the vocational expert testified that, considering the limitations noted in the more recent psychological assessment, Mrs. Stinnett would be unable to perform any substantial gainful activity. (TR 76). The Administrative Law Judge declined to give any weight to the more recent psychological report, noting that the psychologist had seen plaintiff on only two occasions and that there were inconsistencies in the report. (TR 24). However, the court believes that the findings from the only two treating psychologists whose reports appear of record, are essentially consistent. Stated differently, the

---

[2] The court has not undertaken to consider additional medical evidence submitted by the plaintiff to the Appeals Council during its consideration of plaintiff's request for review of the Administrative Law Judge's decision.

[3] The current administrative record does not include reports from mental health specialists who saw plaintiff in connection with her earlier applications for social security benefits.

4

only two mental health specialists who have seen Mrs. Stinnett, and whose reports are currently of record, indicate that she experiences significant limitations based on emotional dysfunction. In light of this fact, and given that Mrs. Stinnett was previously awarded supplemental security income benefits based on psychiatric impairment, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

As suggested above, there is good reason to believe that there is earlier psychiatric and psychological evidence pertaining to Mrs. Stinnett. However, the administrative record currently before the court includes reports from only two psychologists, both of whom have treated Mrs. Stinnett on a regular basis. Dr. Douglas Keffer submitted reports covering his treatment of plaintiff from May 16, 2006 to March 5, 2008. Based on his clinical evaluation, Dr. Keffer diagnosed adjustment disorder with anxiety and depressed mood. At the time of his initial examination, Dr. Keffer noted a GAF of 42, with highest GAF in the past year as 45.[4] Dr. Keffer's treatment notes indicate that Mrs. Stinnett experienced significant fluctuation in her symptomatology. At the time of his last clinical note on December 11, 2007, Dr. Keffer noted that plaintiff's overall condition was "about the same." (TR 368). Mrs. Stinnett ceased treating with Dr. Keffer because she could no longer afford his services.

About two years later, on January 12, 2010, Mrs. Stinnett saw Dr. Lola Byrd, another psychologist. At the time of initial interview, Dr. Byrd performed several psychological tests. A Beck Depression Inventory revealed a moderate level of depression. Based on the tests, and her

---

[4] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

own clinical observation, Dr. Byrd diagnosed recurrent major depression, moderate severity, and panic disorder. Dr. Byrd noted a GAF of 65.[5] On February 16, 2010, Dr. Byrd completed a medical assessment of plaintiff's mental ability for work-related activities. Dr. Byrd noted limited to seriously limited capacity for most work-related emotional functions. She estimated that plaintiff's emotional difficulties would cause her to be absent from work more than three times per month. (TR 489). As previously noted, when asked to consider the impact of Dr. Byrd's psychological findings, the vocational expert indicated that such limitations would render Mrs. Stinnett disabled for all forms of work.

In her opinion, the Administrative Law Judge also noted that a nonexamining state agency psychologist produced a mental health evaluation on April 21, 2008. The court observes, however, that this evaluation was completed before receipt of Dr. Byrd's psychological study and, therefore, does not represent an assessment of all of the mental health evidence now of record.

As previously noted, the Administrative Law Judge considered Dr. Byrd's report to be internally inconsistent. It is true that the psychologist did not list specific clinical observations which document her overall diagnosis. On the other hand, Dr. Byrd did administer various psychological tests in her office, and referenced the results of these tests in her evaluation of Mrs. Stinnett's condition. More to the point, based on her training and experience, Dr. Byrd could be expected to recognize symptoms of depression and anxiety, without listing each individual observation which supported her diagnostic impression. Furthermore, except as to differing

---

[5] A GAF score between 61 and 70 represents only some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

assessments of plaintiff's GAF, the reports of Dr. Byrd and Dr. Keffer are fully consistent. Both psychologists produced findings which indicate that Mrs. Stinnett's level of functioning is poor, and that she is unable to deal with stressful situations or make appropriate adaptations when confronted with problems of daily living. Stated differently, no mental health specialist who has actually examined Mrs. Stinnett has offered any suggestion that she is now capable of returning to regular work activity. In such circumstances, the court is unable to conclude that the Law Judge's assessment of the mental health reports is supported by substantial evidence.

There is a somewhat more fundamental problem in this case. As noted above, another Administrative Law Judge previously determined that Mrs. Stinnett was entitled to supplemental security income benefits based on a somatoform disorder. It has never been determined that plaintiff has been successfully treated for this condition, or that she does not now suffer from such a psychiatric problem. The court understands that plaintiff's new claim for supplemental security income benefits must stand or fall on its own merits. However, given the set of circumstances which underlies this appeal, it would certainly seem reasonable and appropriate for the Commissioner to receipt input from a psychiatrist in order to determine whether Mrs. Stinnett still suffers from the problems which led to the establishment of such a diagnosis. The current administrative record gives no such indication and, in the court's view, the psychological evidence which does exist in the current record tends to support plaintiff's claim of disability.

On the other hand, and assuming that Mrs. Stinnett does not experience some more deeply rooted psychiatric condition which produces physical symptoms, there is some reason to believe that her emotional conditions may be subject to control through appropriate mental health

treatment. Indeed, in her assessment of plaintiff's mental ability for work-related activity, Dr. Byrd declined to offer any opinion as to whether the serious limitations were present despite treatment, or whether the problems could be expected to persist indefinitely. (TR 488). Thus, further development is necessary to ascertain whether Mrs. Stinnett has met the duration requirements established under the Act for entitlement to benefits. Given all these circumstances, the court believes that there is "good cause" for remand of this case to the Commissioner for further development and consideration.

For the reasons stated, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration. An appropriate order will be entered this day. Upon remand, both sides will be allowed to present additional evidence and argument. If the Commissioner is unable to decide this case in plaintiff's favor, based on the existing record, as may be supplemented by additional mental health evidence, the Commissioner will conduct a new administrative hearing.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 21st day of June, 2012.

/s/ Glen Conrad
Chief United States District Judge

8